You can't read it. Sentencing appeal requires this court to answer two principal questions with regard to his career offender guideline sentence. And the first is whether it's clear that the term controlled substance in the sentencing enhancement is informed by the federal version of the Controlled Substance Act that was in effect at the time of sentencing or the one that was in effect at the time of his prior conviction. And the second question is whether it's clear there's a realistic probability that federal marijuana prosecutions before the 2018 Farm Bill were done in such an overbroad manner that it included hemp. And both questions should be answered in Mr. Belducea's favor. And so with regard to which version to apply, Congress instructs in the Sentencing Reform Act to apply the version of the guidelines manual that's in effect at the time of sentencing. The guidelines repeat this instruction in 1B1.11 except for ex post facto concerns which aren't relevant here. And so the natural reading of that guideline enhancement would be a controlled substance that's defined in the Federal Controlled Substance Act in effect at the time of sentencing. That makes a lot of sense to me. But the question, right, we are on plain error, right? Correct. So the question is was it obvious and what you may have seen, you may not have, is the cert denial with Justice Barrett and Justice Sotomayor on this issue in Guarant? I did not see that. Let me just quote what they say and then you tell me if it's determinative or if you disagree. They do – those two justices put the split pretty starkly describing the position you've urged, which I think is the correct one. But when it comes to the Fifth Circuit, they say that we have not resolved this question. We've indicated agreement with it, but we haven't resolved it. Well, that is true that the Fifth Circuit does not have a decision on point with regard to the version. But this court doesn't require a specific case to have addressed a precise issue in order to find the error to be plain. So with regard – There's a split and even the Supreme Court, at least two justices are saying we've indicated agreement, but we haven't decided it yet. Would that still qualify for obviousness? So I was not aware of a split with regard to Federal Controlled Substance Act version applying. Bautista was the Ninth Circuit case in the same legal landscape as ours because of Leal-Vega. And they said it's the statute that was in effect at the time of sentencing that applies. The First Circuit also reached that same decision in Abdulaziz where the parties had agreed essentially that it was the Federal Controlled Substance Act that applied. And then the First Circuit's come back to it in this case recently. Crocco? Crocco. And in Crocco, that's where they're still debating whether or not it's the Federal version or a state version or some other definition of a controlled substance term. Here, I don't think we have that debate over whether it's the Federal Controlled Substance Act or the State Controlled Substance Act. Here it was Federal prior, so it's not obvious a state definition would apply anyways, or some other definition. And that's because of Gomez-Alvarez, and that is this court's decision where it adopts the reasoning of Leal-Vega and says that the Federal Controlled Substance Act is what should define the term controlled substance for purposes of federal uniformity in sentencing. So in that landscape where we know we're incorporating the federal statute, it makes sense connecting the dots of apply the guidelines in effect at the time of sentencing. This term incorporates the Controlled Substance Act, and this term, the controlled substance offense, defines instant offenses because 4B1.1 points to controlled substance offense to define instant offenses as well as prior. And in that landscape, I think we do overcome the burden, the hurdle of clearer obviousness. But I will certainly take a look at that in dissent and see if further – And the unpublished NAVA decision? The unpublished NAVA decision is, first off, unpublished, so it's not precedential. I also don't think it's persuasive because it was very short reasoning relying on Bishop, which was a different type of issue on a landscape where the court had not yet delved into the contours of delegation doctrine for sentencing supervised release conditions. And that's different than here where we do have Gomez-Alvarez where the court naturally said what sentencing law under the statute and guidelines seems to imply, which is was that substance involved in that prior conviction covered by the federal CSA? It didn't have that question presented to it, so it did not squarely address that, and neither did Lopez-Cano, which is the unpublished – So what if marijuana was legalized? Would the prior conviction then be irrelevant? It would not meet the definition of a controlled substance offense, and then I think we would not have the realistic probability. But at the time it was illegal, so it kind of depends on whether you're looking at convictions as if they matter at the time or they matter now. Right, and for the purposes of sentencing, I think the answer is do they matter now because, again, we're looking at the guidelines in effect, and sometimes the commission changes the guidelines in a way that do remove a prior conviction from being scored. One example of that would be the amendment to the crime of violence definition, also in 4B1.2, where the commission said no more burglaries. And so that meant the day after that's in effect, someone has prior burglaries that previously would have scored and made him a career offender if he had enough, but now they don't. And the judge is, because the guidelines are advisory, can modify the sentence upwards if they think the resulting guidelines aren't fair enough. So there is some disparity that comes about with these changes in federal laws as they're incorporated into the guidelines, but that sort of is a result of sentencing and how we have it. The Abdulaziz Court in the First Circuit addresses that nicely, I think, just to say the result that we have come to accept is we apply the laws as they exist at the time of sentencing. And so with all that said, I think it is the current version of the Federal Controlled Substance Act that should apply. I think with regards to realistic probability, it is also important to keep in mind that this was federal prior and that Congress changed that definition. Congress is the one that identified a realistic probability of someone being prosecuted for hemp and decided we're going to narrow that definition of marijuana in a way that excludes hemp. And so I think that choice by Congress in the 2018 Farm Bill, which was also meant to expand hemp cultivation and production, they thought hemp farmers would want that security of knowing they aren't possibly going to be prosecuted for doing that. That, in conjunction with the other case samples and realistic practicalities of prosecuting marijuana, I think, set this case apart from Castillo-Rivera and Alexis v. Barr and mean that we have shown that realistic probability that hemp was being prosecuted before the definition was amended. One other issue I want to mention on realistic probability was a distinguishing point between Castillo-Rivera and Alexis v. Barr in that those cases and others that have addressed that standard are dealing with state priors. Again, it's a federal prior here. I think that can make a difference because the Castillo-Rivera en banc was concerned with not frustrating Congress's intent that Congress wouldn't have wanted all of these Texas felon in possessions and other statutes, state statutes, not to be aggravated felonies, not to match that federal definition. But here it is the same legislative entity, essentially, and that is Congress, that knowing about this career offender enhancement and the categorical approach and that at the time the Farm Bill was passed, the three circuits, including this one that had addressed the issue, were incorporating the Federal Controlled Substance Act and a majority of circuits, not this one, but a majority don't require an actual case to show that realistic probability. But even against that background, Congress chose to narrow the definition of marijuana and exclude hemp and did not instruct any amendment to the guidelines, either on their own volition or to instruct the commission to investigate doing so. So I think that is a distinguishing point for Mr. Belducea's case. But the commission hasn't been able to make changes for several years. Correct. They were able to make changes after Gomez-Alvarez for a few years. So if they didn't like that the weight of the circuits were leaning towards a Federal Controlled Substance Act incorporation, the commission did have a few years to weigh in on that before they lost the commissioners. But I believe Congress still has the ability to directly amend the guidelines without waiting for the commission to do so if it really wanted to do so. One other reason why Mr. Belducea shouldn't be a career offender, and I raised this in my brief but acknowledged it as foreclosed, was that the inchoate offenses, he had three prior conspiracy marijuana convictions, and that that inchoate aspect is in the guideline commentary and not the text. That issue is being argued tomorrow before a different panel of this court in a case named Vargas. And while I don't think Mr. Belducea could prevail on plain error in his own incident case, he would certainly want to try to win to ride the coattails of Vargas if it came down in the favor. I don't have the case number, but it is Vargas, and it's being argued tomorrow afternoon. And so we would ask that this case be placed in abeyance for Vargas in case that also can help Mr. Belducea. If there are no other questions. I have one, but don't groan. I have two. Okay. The government is agreeing that it's subject to plain error, but I've never – I'd just love your thoughts on it because if I'm right at the sentencing, the defense attorney tells the district court, quote, we're in the career offender range. So, I mean, I've never – this has always been a problem for me. Why is – that's not really a forfeiture subject to plain error. That's the defense attorney telling the court my client is a career offender. The defendant did not intentionally and knowingly waive the argument that we're raising now. I think that comment, and I'll look back, was in the context of accepting that some of the other objections he was making would not change the guidelines because he did object to the drug guideline level, and he did also object to the role, and the court actually granted the role objection, which was the subject of the second issue raised that has already been resolved. And so at the end of the sentencing, the defense counsel was also making a mitigating argument for a sentence below the guidelines and says if the court wants to sentence him within the guidelines, he asks for it to be at the bottom. But I don't recall reading anything that I flagged in my mind as an intentional waiver of this issue. The issue that he had identified, which is foreclosed by this court, was that whether there's a difference between generic conspiracy and 841, 846 conspiracy because of the lack of an overt act. And just before you sit down, would you want to address McNeil a little bit? Sure. So McNeil, the government relies on to try to convince the court that there is a dispute as to what timing issue we're looking at. But McNeil was a backward-looking question. The question was what were the elements and classifications penalties for that prior offerance? And we agree that for that question, to define what that prior conviction was at the time, to look back at what those elements and penalty classifications were. But then that needs to be compared against something. And it's that enhancement definition, the generic definition, that it has the definition given at the time of sentencing. And the comparator McNeil didn't address the definition of serious drug offense. It was addressing what was that prior conviction. And here we're addressing what is the definition of controlled substance offense in the career offender guideline. And essentially Congress changed that definition when it changed the Controlled Substance Act. And that should have carried through to the guidelines to be that comparator for Mr. Belducea's priors. All right, counsel. Thank you. Thank you. May it please the Court. I think the question is, the main question is, should we be looking backward or does this apply, does the CSA as it's currently drafted apply to prior convictions? I think that's what McNeil goes to. And frankly, Judge Higginson, I don't fully follow that distinction that's made because it seems to me that the question is the 4B1.1, 4B1.2, those are recidivist provisions. And they're looking backward in time as to how dangerous is this person as a violator because they violated the law before and certain types of violations count. And the CSA, as Gomez Alvarez says, has been probably essentially incorporated into the guidelines, but that doesn't mean that you don't look backward when the question actually calls for a look backward. It's like the tax guideline. In a tax case to find the loss, you don't look at what the definition of the tax code is today at the time of sentencing. You look at the time of the violation to find out what the tax loss is. So it just seems to me that in this particular instance where you're looking at a guideline provision that has to do with how do we assess or what are we doing with prior criminal conduct, it makes sense to look at the prior criminal conduct that was in effect at the time. And on the question of whether or not this was a clear extension, it seems to me it was not. The Fifth Circuit in Allen back in 2002 was presented with a question that had to do with a revision to Texas law defining controlled substance offenses based on the quantity that was involved. And the court looked back, and it could not figure out under the old formulas where it fit in under the new. And so the court went with the old statute and said that's what defines, that's what's going to define what a controlled substance offense is for purposes of the guideline. So am I clear? The government is conceding we look to the CSA's list to define it. You're just saying the timing issue is what's – I think that's what the question is. You've seen the Guarant separate statement by the justice. It's not relevant because I agree with you. The issue is the timing, not CSA. Yeah, I mean – and I think that's what Gomez-Ulver had. Well, let me ask it this way then. Would this defendant be a career offender in, say, the Eighth Circuit but not in the Ninth? Would this fellow – is there a split on that timing question so that the identical priors would count in some circuits but not in others? I think so because in Doran in the Eighth Circuit they did look backward. Yes. So I think that's right. But Bautista, the Ninth, they don't. But Bautista and the First Circuit, they don't. They've looked at it and said – And you're saying we're just undecided, hence not plain error, or you think that we've clearly stated we look back? I don't think you've stated clearly one way or the other. I mean I think that in – What's your opinion about what we should say? I think – Even if it might not benefit this defendant as not being plain and obvious. I mean, like I say, I have conceptually a hard time not looking at the prior conviction in the context of what was the law that defined it at the time. But you know what the counterargument, which is that we do use the guideline book in effect at the time. So if this is a federal enhancement, we would normally ask at the time of sentencing, does it qualify or doesn't it? But it's a question about what was that offense at the time? Is that a controlled substance offense that he committed at the time? I mean an example would be looking at the Borden-type issue. If you've got a crime of violence, it's an aggravated assault five years ago that had – that was defined as intentional and willful unknowing. And the legislature comes along in the interim and says, well, you know, we've got so many people shooting guns. We want to reach a broader category of people, so we're going to add recklessness. So they add recklessness to it. And now under Borden, that is not going to be a crime of violence today. But the defendant at the time, it was not a reckless state of mind. That's what the offense was defined at the time. And the dangerousness is there. It's very clear. Wait, do you have a case? I might have thought it was the opposite. If it doesn't qualify at the time, you're fortunate. That means you can't be enhanced. Well, for the defendant, you can't be enhanced. But what I'm saying is if the defendant five years ago committed an offense that met the narrower definition – He's a recidivist. He's a recidivist. And now – Can we enhance him for it now if it's been taken off? And that's what I'm saying is I think you can look back to – What's your best case for that? The statute at the time. Doran, right? Well, it's probably Doran. Johnson, to some extent, from the Fourth Circuit, which involved a change in classification from a felony to a misdemeanor. Millett in Ohio out of the Sixth Circuit was a similar circumstance. Those, I think, are the best ones. And the other thing that I point out, there is a case from the circuit. It's Marvan Calderon. It's cited in the briefs. And that was a circumstance. There was a change to the guideline that had to do with a change that added, I believe it was, offer to sell a controlled substance, which is not in the Title 21 offenses. It's not in the controlled substance offenses, but it is in some statutes. And they added that. I think it's since been taken out. And in that circumstance, it worked the other way. It worked to the disadvantage of the defendant in that particular case. And the question was whether or not there was an ex post facto problem in applying it to him at that time because the change occurred after. But I think that's a circumstance where it's very clear what the Commission was doing. The Commission made very clear we are changing the definition of the controlled substance offense for purposes of this particular guideline. I don't know that that's happening. Can I interrupt you just because you probably know that First Circuit Croco case? Yes. I mean, in the footnote, a lot of ambiguity in the text, drop footnote. One thing is certain. If the federal CSA has chosen as the source of definition, it's the version of the federal CSA in effect at the time of the instant federal sentencing that governs. Yeah, well, that's what they're saying. But I'm saying you don't have to reach that conclusion. What I'm saying is, wait a minute, for a recidivism issue, the question is what was it at the time that he was convicted because 4B1.2C. And your point is if he is committing this kind of crime, it was a crime at the time and he knew it and he committed it. Yes. Then that is what the concern is. Yes. And so that's what we have to look at. That's what the recidivism is about. And if there's a problem with it, and it strikes me that this is one of those circumstances, and I think it's Doran that mentions it. The court can address that issue with a departure, and marijuana may be those kinds of cases. The court can address that kind of issue with a departure. Of course, the opponent said that on the flip. I understand that. They said current. They could address it. Absolutely. If he remanded this, the district court could still award the same sentence. If he remanded it the same – it would have to be an upward – yeah, I think so. I mean, it would be a different set of guidelines. I understand that. Yes. But could still – But this particular change to the guideline – or to the Controlled Substance Act occurred after this version of the guidelines was adopted. And so the commission wasn't really contemplating this kind of change at the time. And Congress, I suspect – Has the commission had the opportunity to make the change since then? I don't believe they have. Because they've been in this state of – But the Farm Bill wasn't signed and didn't go into effect until December 20th of 2018. And this guideline – When did the commission go out of pocket? I can't tell you that. But it's been, I know – It's been several years. Yeah, it's been several years. But, I mean, that doesn't get around the fact the commission didn't make the change. No, but, I mean, I think it supports the notion that we don't really know what they would do because they don't know what they would do. I think that's right. We don't have much for them to know. I think that's right. I mean, that's why I say it's not – it's a matter of this hasn't arisen from now. But so then are we better off just simply finding that there's no plain error and not deciding whether there's error? Probably. And waiting for them to come back? That's what NAVA did. Well, they're not going to come back. They've only got one member, if even that. So district courts need guidance on this. Well, I agree with that. And that's sort of this whole – The same prior accounts for career status in another circuit, but it doesn't in this one. But that would be true regardless of how you rule, right? Well, I mean, it's going to – it's not going to account for purposes of the guidelines, but it will still count under 851, 841 being – But we will not be creating a split whichever way we rule. We will just be joining one part of the – You'll be joining one side or the other. There's going to be a split even if we say nothing, even if we just defer, you know, waiting for – The question is still out there. It's not – Okay. And what about this Vargas case? Should we wait on that? Tomorrow, she mentioned. That's the question whether or not conspiracy is a qualifying offense. I don't know. I thought the authority was that commentary has the force of a – has the effect of a guideline. I thought that's what was controlling. And mentioning the conspiracy – It's good for you to both even know this because I didn't know this case existed. I didn't know it either. I'm faking it. You're what? I'm just going with you. But, I mean, I understand what the issue – I understand what the issue is. I mean, I understand the issue because they have raised it. But just so I'm clear on your position, if, for example, marijuana offenses were removed from the CSA altogether. Yes. But a person had been previously convicted of federal marijuana offenses, you think if they're going to be sentenced today on a new smuggling, we'd still – a district court would still enhance that person as a career offender? I think so until the next version of the guidelines comes out, which then would be an effective adoption of the CSA that was in effect at the time the guidelines were adopted. But this CSA was not in effect at the time these guidelines were adopted. Okay. Does that – Yeah, no, I understand. The other thing that I would observe is that his priors are for conspiracies. And we're talking about marijuana. But marijuana was not essential to those prior convictions. Those convictions were for conspiracy to possess with intent to distribute a controlled substance. So he could have been hauling a bag of rocks. He could have been hauling cocaine. He could have been hauling heroin. His conspiracies were he had agreed to possess with intent to distribute a controlled substance so that it might encompass him now under the current law I think doesn't matter because his intent was and his conspiracy, his agreement was to possess with intent to distribute a controlled substance. And that may – Did you help that argument in your brief? No, I just found it. I'm sorry I didn't write this brief, but it occurred to me. But something in the back of my head is going, wait a minute, these are conspiracies. These are conspiracies. This is different. It doesn't turn on the specific controlled substance and the proof of what it was. The other thing on the question of the – Just by the way, Vargas is 21-20140. Wait, oh, great. What? I just looked it up. 21-20140. Okay, that's not right. I just looked it up. I'm sorry. Go ahead. I lost my thought. It was on the conspiracy. It's not important, but it's I think most of what I have. Do you want to speak to Gomez-Alvarez before you sit down? In terms of whether or not it addressed the question? Yeah. I don't see how it does. I don't think that was the question before the court. There was no change in the Controlled Substance Act with respect to what the substances were or what the definition of the offense was. Oh, I know what I was going to say. With respect to – I'm looking for the words – this realistic probability under the categorical. You have a concurring dissent or dissenting concurrence. Yeah, it's a mess. Well, it is, and I can't help but look at it. I'd throw this out there. I don't think it's controlling, but this guy was not hauling industrial hemp in 50-pound lots in backpacks across the border in West Texas. So the likelihood of somebody being prosecuted or somebody even doing that, it's going to be sheer accident. It's not going to be – and we're not going to prosecute it now. It wouldn't be prosecuted now if it turned out to be hemp, if it had 0.3%. But he was hauling controlled substance. This isn't a circumstance, and that may be the offense that I think – what I'm saying is that's the offense to me that makes sense from a realistic probability of it being prosecuted. It isn't going to happen because you're not going to have people out there hauling 50-pound or 50-kilo sacks of marijuana through the desert to bring hemp to make rope and clothes and biofuels and whatever else you make with it. That's an industrial product, and that's not what they were in the business of. That's not what he was in the business of. If there are no more questions, I'll see you tomorrow. Oh, you're back up tomorrow? I'm coming back tomorrow. Will you be back tomorrow? I will not be. First off, Allen, Doran, they are all on the line of McNeil. They are dealing with defining what are the elements and penalties of that prior conviction, and those are locked in time. What happened back then happened, whatever the elements, whatever the penalties. That's what we are comparing to the definition that exists now. So you are saying we would be creating a circuit split if we go against you on this? It would be a circuit split with Bautista, yes. Right, but I thought Doran was a circuit split with Bautista. Doran is a completely different issue in my mind. It's a completely different issue. As far as I know, there is not a circuit that has decided the timing issue in a published case and in a way that is against what I am arguing. We also don't have one ourselves yet. Right. There is one that I believe may present it later that is preserved if that ends up being the argument on appeal in a southern district case of Texas. But with regard to the splits that exist, Ninth Circuit Bautista basically is this case. It was an Arizona prior, but they applied the federal – I thought there was a split. What am I missing? There is a split on whether federal controlled substance is incorporated or a state definition. I don't see a split yet on the timing. It's undecided. You have distinguished Guarant. It isn't relevant to the issue in front of us. It's on the point you're talking about. That's the split it's looking at. Right. There is no split on federal timing. Bautista says, apply the current version in our federal land. And Abdulaziz, assuming it was federal land, says, of course, it's going to be the CSA that's in effect at the time of sentencing. And Crocco says in its footnote, if we are going to be applying the federal version, of course, it's the one that applied at sentencing. I don't see a persuasive argument about applying the version that existed back when the guidelines were last amended because the reason why there's incorporation of federal terms is that they're ever changing. And that makes sense in the federal drug schedule because it's incorporating policy changes and scientific changes. And sometimes those drug schedules are expanding. Sometimes they're shrinking. This is not going to be a windfall for the defendant. It's just a rule. Is that a pretty big windfall that all prior marijuana convictions are now out the window? It is. That seems pretty huge to me. But yet this has been the law for two years, and this is the first case that's raised it. So I'm not sure if it's that those cases don't come up. Oh, my heck, if they come out this way, it'll come up. But it also is a reflection going to your concern, Judge Haynes, about why aren't we concerned about how dangerous or culpable this was back at the time? Because sentencing is looking through the lens of what do we think is culpable and dangerous now, and how do we judge that now? But does it on the recidivism point? I mean because part of it is avoiding the person committing another crime. And if they're a criminal all the time, they're just always violating the law, that's a concern, right? That is a concern, but we have to compare it to what is the definition of that recidivist enhancement. For example, in Congress recently, the same week actually as the Farm Bill, changed the recidivist drug enhancements in 841 and I think 960 to not be prior drug felonies. Now it's serious drug felony. So people who would have been eligible for an enhancement because they had what was defined as a prior drug felony, all of a sudden were not. Now they had to satisfy that extra criteria of being a serious drug felony. And to disadvantage the defendants, there was an extra term added of serious violent felony. So the day before, people who had those prior serious violent felonies would not have gotten a recidivist enhancement. But now, after the First Step Act, they do. Well, when Congress is creating that kind of thing, that happens. And making something a crime that wasn't a crime before also causes problems. So that's to me a little different from how are we going to construe this guideline. Well, I think it gets back to that example of crime of violence definition where the commission changed the definition and removed burglary. And that just applied going forward. I tried to find a case saying it did apply or didn't apply. I couldn't, but I think it's because the argument would have been seen as so frivolous or backward because we know that we apply the guidelines as they exist at the time of sentencing to the defendant who is facing the judge that day. And so for those reasons, I think it should be the federal version of the Controlled Substance Act that's in effect at the time of sentencing, and we've shown a realistic probability. Thank you. Thank you, counsel. Thank you both for your assistance today. We look forward to more assistance tomorrow from one of you. And we are in recess. Thank you. Thank you.